In the Matter of the Accounting of SAMUEL B. COHEN et al., as Trustees under the Will of JOSEPH COHEN, Deceased, Appellants. MORTON COHEN, Respondent.

First Department, July 29, 1982

APPEARANCES OF COUNSEL

*Arthur I. Singer* for appellants.

*Joseph Winston* for respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

This is an appeal from a decree of the Surrogate's Court, Bronx County, on an executor's accounting. The decree surcharges the executors for the objectant's share of the damage claimed to have been suffered by the estate by reason of the failure of a tenant corporation to pay a fair rental to the landlord corporation (in both of which the estate had a substantial but minority stock interest) from the inception of the executorship in 1960 until the accounting in 1980, with interest from the first day of each month of underpayment.

We would modify the decree by reducing the surcharge against the executors by eliminating the surcharge for all periods prior to September 1, 1970 (presumably the first rental payment date after August 12, 1970) and the interest thereon.

Decedent died in 1959. He was survived by five children. His executors are a son and son-in-law. In 1980 they filed the account here under review. The objectant Morton Cohen is another son of decedent. Decedent's will provided for a trust of one fifth of the residue for Morton's benefit, with the executors also named as trustees. That trust has never been funded. The Surrogate treated this executors' account as also a trustees' account.

Decedent owned 40% of the stock of a corporation named North Eastern Fabricators, Inc. and 33⅓% of the stock of a corporation named Jofras Realty Co., Inc. North Eastern was the tenant of certain real property owned by Jofras. The executor son Samuel B. Cohen also owned substantial stock interests in both these corporations (40% of the stock of Jofras and 40%, later increased to a majority, of the stock of North Eastern). There was of course a conflict of interest inherent in the landlord and tenant relationship between the two corporations, intensified by the stock ownership by decedent's son Samuel. There was nothing wrong with that conflict; that conflict was unavoidable, it was inherent in the family situation and in the fact that the decedent owned stock in both the landlord and tenant corporations. What was required in this situation was fair dealing among the various entities, without favoring the executor at the expense of the estate's interest.

The Surrogate has found that North Eastern paid less than a fair rental value to Jofras during the entire period of the accounting. We do not disturb that finding. The Surrogate went on to surcharge the executors for the resultant damage to Morton which he fixed at Morton's share (1/5 of the estate's 33⅓% of the Jofras stock, or 6⅔%) of the underpayment of rent from the beginning of the executorship, with interest thereon. We do not agree with the surcharge for the period prior to September 1, 1970, as we do not think Morton (or the estate) was damaged by the underpayment for that period.

From the date of decedent's death until August 12, 1970, the estate had 40% of the stock of North Eastern and only 33⅓% of the stock of Jofras; Morton's trust interest was one fifth of that, i.e., 8% of the stock of North Eastern and 6⅔% of the stock of Jofras. To the extent that there was underpayment to the detriment of Jofras, that underpayment was to the benefit of North Eastern. As both the estate's and Morton's beneficial interests were slightly greater in North Eastern than in Jofras, neither the estate nor Morton was damaged by any underpayment. This point is even clearer as to Morton, for in addition to his trust interest of 8% of the stock of North Eastern, he also owned outright another 10% of North Eastern's stock, so that his aggregate legal and trust percentage interest in North Eastern was almost three times his trust interest in Jofras.

This is not a case for application of the rule that a trustee who engages in a series of improper transactions, some resulting in losses and others in gains, is responsible for the losses without offset for the gains. For here each gain and loss pair represented merely the obverse sides of the same transaction. So far as the estate and trust were concerned, payments between North Eastern and Jofras merely represented transfers from one pocket to another, with a slight benefit in favor of the North Eastern pocket.

It is argued that Morton never received the benefit of this underpayment because he received his share of the stock of North Eastern in August, 1970 and disposed of it at that time, apparently to the corporation, without knowing of the underpayment. This lack of knowledge of the underpayment is immaterial. If there was an underpayment, it was reflected in the financial condition of North Eastern, which was presumably known to the parties in 1970. If there was any unfairness in Morton's disposition of the North Eastern stock in August, 1970, it is not an issue on the present appeal. Accordingly we find that neither the executorial estate, the trust nor objectant were damaged by the underpayment of rent prior to August 12, 1970. Thus there was no occasion to surcharge the executors for that period.

From August 12, 1970, however, the situation changed. On that date, the executors distributed to themselves as

trustees and the trustees distributed to Morton 6⅔% of the stock of North Eastern. (The estate's remaining stock of North Eastern was distributed to other residuary legatees in 1974.) Thereafter, the estate and the unfunded trust and Morton no longer had an interest in North Eastern; their only interest was in Jofras. The executor Samuel B. Cohen, however, continued to have interests in both North Eastern and Jofras. Thus, any failure by North Eastern to pay a fair rent to Jofras damaged the estate and Morton and benefited the executor Samuel B. Cohen, individually; and thus the executors were properly surcharged for Morton's share of that damage from September 1, 1970.

The decree of the Surrogate's Court, Bronx County (GELFAND, S.), entered December 23, 1981 should be modified, on the law and the facts, to the extent of eliminating the surcharge against the accountants appellants for all periods prior to September 1, 1970, and interest thereon, and the decree should otherwise be affirmed, without costs to any party. Findings of fact inconsistent with this opinion should be reversed and new findings made as indicated herein.

Ross, BLOOM and ASCH, JJ., concur with SILVERMAN, J.; MURPHY, P. J., dissents and would affirm on the opinion of Surrogate GELFAND.

Decree, Surrogate's Court, Bronx County, entered on December 23, 1981, modified, on the law and the facts, to the extent of eliminating the surcharge against the accountants appellants for all periods prior to September 1, 1970, and interest thereon, and the decree otherwise affirmed, without costs to any party. Findings of fact inconsistent with this court's opinion are reversed and new findings made as indicated therein.